1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10 PROGRESSIVE WEST | CASE NO: 08-CV-180 W (CAB) |

PROGRESSIVE WEST
INSURANCE COMPANY,

　　　Plaintiff / Counter defendants,

　　v.

CRAIG TISCARENO, et al.,

　　　Defendants / Counter claimants.

CASE NO:  08-CV-180 W (CAB)

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT
(DOC. NOS. 54, 61.)**

　　　Pending before the Court is Plaintiff/Counter defendant Progressive West Insurance Company's ("Progressive") motion for summary judgment  pursuant to Federal Rule of Civil Procedure 56.  The Court decides the matters on the papers and without oral argument.  See Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **DENIES** Progressive's motion.

**I.**　　**BACKGROUND**

　　　This declaratory relief action arises out of a fatal car accident.  On January 5, 2007, twenty-nine year old Joshua Tiscareno was driving his car, eastbound on Athena Avenue, in Encinitas, California.  At the same time, Kody Porterfield, who was sixteen years old at the time, was driving his car southbound on Highway 101.  As Joshua Tiscareno began to execute a left turn across the southbound Highway 101, Kody

08cv180w

Porterfield's car collided with the driver's side door of his vehicle.  Joshua Tiscareno died as a result of the accident.  Joshua Tiscareno is survived by his parents, Craig and Teresa Tiscareno ("Defendants" or "Tiscarenos"), as well as his brother Spencer Tiscareno.  At the time of the accident, Kody Porterfield was insured by Progressive.

The accident was reported to Progressive on January 6, 2007.  Shortly thereafter, Progressive began its investigation.  On January 18, 2007, Progressive took the recorded statement of Kody Porterfield. (Doc. 54, Exh 5.)  In his statement, Kody admitted that at the time of the accident he had been driving 85 miles per hour even though he believed the speed limit was 45 miles per hour. (the real speed limit appears to have been 40.)

Progressive also made several attempts to contact the Tiscarenos. (*Id.*, Exh 1 at 17, 18.)  On February 9, 2007, Progressive was contacted by Attorney James McCabe. (*Id.*, Exh 1 at 18.)  McCabe indicated that he represented the Tiscarenos, that all communication with them should be done through him, and that he did not have a police report regarding the accident. (*Id.*)

On February 14, 2007, Progressive sent a letter to McCabe.  The letter states that Progressive was continuing its investigation and was awaiting the results of the police report. (Doc. No. 54, Exh. 10.)  In the same letter, Progressive also requested the production of Joshua Tiscareno's birth and death certificates, along with a copy of the coroner's report. (*Id.*)  Progressive also requested information from the Tiscarenos to establish the state of their relationship with Joshua. (Doc. No. 54, Exh. 1 at 18.)  Evidence of their relationship was significant to Progressive because it is a relevant factor when assessing the liability for any wrongful death benefits that are to be paid to the surviving parents of an adult child. (Doc. No. 54 at 4, citing Cal.Code. Civ. Proc. § 377.60.)

On March 14, 2007, Progressive sent McCabe a status report regarding its investigation. (Doc. No. 54, Exh. 13.)  Progressive explained that it could not finalize its liability evaluation until it had the police report. (*Id.*)  Progressive also requested

information regarding the Tiscarenos relationship with their son and a copy of his birth certificate. (*Id.*)

In early April, Progressive made additional attempts to get a copy of the police report, which was not available. (Doc. No. 54., Exh 1 at 21.)  Ultimately, the police report would not be completed until October 8, 2007. (Doc. No. 54., Exh. 51 at 40.)

On April 16, 2007, the Tiscarenos made a written demand for the full amount of the Porterfields' policy limits ($100,000). (*Id.* at Exh. 17.)  The letter also included a conformed copy of a wrongful-death complaint that they had filed against the Porterfields in San Diego Superior Court on March 28, 2007. (*Id.* at Exh. 17.)

On April 25, 2007, Progressive responded to the Tiscareno's written demand in a formal letter. (*Id.* at Exh. 18.)  Progressive explained that they were "unable to accept or reject" the demand for the policy limits. (*Id.*)  Progressive also noted: (1) that their investigation was ongoing, (2) that the preliminary investigation lead them to believe that Joshua Tiscareno was principally at fault, and (3) that they had still not received any information to confirm the relationship between the Tiscarenos and Joshua Tiscareno. (*Id.*)  Progressive also requested an "open extension to respond" to the demand. (*Id.*)

On April 30, 2007, McCabe replied to Progressive's letter. (*Id.* at Exh. 22.) McCabe stated that the Tiscarenos had interpreted Progressive's April 25th letter as a rejection of their policy limit demand.  They also rejected Progressive's request for an open extension. (*Id.*)

On May 3, 2007, McCabe sent a letter to the Porterfields' counsel. (*Id.* at Exh. 40.)  McCabe acknowledged that the police report had not been finalized and that he had requested documents and other information to substantiate the relationship between Joshua Tiscareno and his parents. (*Id.*)

On May 9, 2007, Progressive sent a letter to Mr. Kim Porterfield.  Mr. Porterfield had apparently requested that Progressive immediately pay the $100,000 policy limit to the Tiscarenos. (*Id.* at Exh. 40.)  In response, Progressive explained to Mr. Porterfield

1   that they had still not received the police report or any information to confirm the

2   relevant relationships. (*Id.*)  Because they had not been able to conduct a complete

3   investigation, Progressive was not willing to pay the policy limits.  Instead, they were

4   pursuing written discovery and the deposition of the Tiscarenos. (Id.)

5        On May 18, 2007, McCabe sent a letter to the Porterfield's counsel in which he

6   asserted that Progressive had failed to properly investigate the case. (*Id.* at Exh. 28.)

7   McCabe gave specific examples of actions that Progressive could have taken to acquire

8   the information they claimed to still be seeking.  For example, McCabe claimed that

9   Progressive could have interviewed family and neighbors to determine the extent of the

10  relationship between the Tiscarenos and their son. (*Id.*)

11       On June 6, 2007, the Porterfields' counsel informed Progressive that he had taken

12  the depositions of Mr. and Mrs. Tiscareno. (*Id.* at Exh. 32.)  He also supplied Progressive

13  with documents confirming the close relationship between the Tiscarenos and their son.

14  (*Id.*)

15       On June 8, 2007, Progressive tendered the $100,000 policy limit and notified the

16  Porterfields that they had done so. (*Id.* at Exh. 35,36.)  On June 15, 2007, the

17  Tiscarenos rejected the $100,000 offer. (*Id.* at Exh. 38.)

18       In January 2008, the Tiscarenos, the Porterfields, and Progressive entered into a

19  stipulated judgment against the Porterfields for $750,000.  By its terms, the judgment

20  was not recorded.  Progressive agreed to pay the $100,000 limit to the Tiscarenos.  The

21  stipulation also included a covenant not to execute against the Porterfields for the

22  remaining $650,000.  In turn, the Porterfields agreed to assign to the Tiscarenos all

23  claims and causes of action they may have had against Progressive, arising from

24  Progressive's alleged unreasonable failure to accept the April 16, 2007, policy limits

25  demand. (*Id.* at Exh. 48.)

26       On January 29, 2008, Progressive filed this action seeking a declaration that its

27  decision in regards to the April policy limits demand was reasonable.  (Doc. No. 1.)  On

28  April 1, 2008, the Tiscarenos filed a counter-claim against Progressive. (Doc. No. 3.)

1    **II.    LEGAL STANDARD**

2        Summary judgment is appropriate under Rule 56(c) where the moving party

3    demonstrates the absence of a genuine issue of material fact and entitlement to

4    judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477

5    U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it

6    could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

7    248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a

8    material fact is genuine if "the evidence is such that a reasonable jury could return a

9    verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

10       A party seeking summary judgment always bears the initial burden of establishing

11   the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving

12   party can satisfy this burden in two ways: (1) by presenting evidence that negates an

13   essential element of the nonmoving party's case; or (2) by demonstrating that the

14   nonmoving party failed to make a showing sufficient to establish an element essential

15   to that party's case on which that party will bear the burden of proof at trial.  Id. at 322-

16   23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary

17   judgment."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

18   (9th Cir. 1987).

19       "The district court may limit its review to the documents submitted for the

20   purpose of summary judgment and those parts of the record specifically referenced

21   therein."  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1030 (9th Cir.

22   2001).  Therefore, the court is not obligated "to scour the record in search of a genuine

23   issue of triable fact."  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing

24   Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).  If the moving party

25   fails to discharge this initial burden, summary judgment must be denied and the court

26   need not consider the nonmoving party's evidence.  Adickes v. S.H. Kress & Co., 398

27   U.S. 144, 159-60 (1970).

28

1     If the moving party meets this initial burden, the nonmoving party cannot defeat

2   summary judgment merely by demonstrating "that there is some metaphysical doubt as

3   to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S.

4   574, 586 (1986); <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th Cir.

5   1995) (<u>citing</u> <u>Anderson</u>, 477 U.S. at 252) ("The mere existence of a scintilla of evidence

6   in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving

7   party must "go beyond the pleadings" and by "the depositions, answers to

8   interrogatories, and admissions on file," designate "specific facts showing that there is

9   a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324 (<u>quoting</u> Fed. R. Civ. P. 56(e)).

10     When making this determination, the court must view all inferences drawn from

11   the underlying facts in the light most favorable to the nonmoving party. <u>See</u>

12   <u>Matsushita</u>, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and

13   the drawing of legitimate inferences from the facts are jury functions, not those of a

14   judge, [when] he [or she] is ruling on a motion for summary judgment." <u>Anderson</u>, 477

15   U.S. at 255.

16

17  **III.**  **DISCUSSION**

18     Progressive has moved for summary judgment on both its declaratory relief cause

19   of action as well as the Tiscarenos' claim for bad faith. Progressive asserts that it acted

20   appropriately in responding to the Tiscarenos' policy limits demand, and therefore, can

21   not be liable for unreasonably failing to accept the 'defective' demand—as a matter of

22   law. (Doc. No. 54 at 16.)

23     In opposition, the Tiscarenos assert that Progressive had sufficient information

24   to make a proper determination by April 2007. As such, their failure to pay the policy

25   limits was unreasonable. At a minimum, the Tiscarenos assert that genuine issues of

26   material fact exist regarding Progressive's reasonableness. Having reviewed the evidence

27   provided, the Court is forced to agree that issues of material fact exist which preclude

28   granting the requested relief.

1    In California, an insurer can be liable for a breach of the implied covenant of good

2    faith and fair dealing if it unreasonably refuses to accept a settlement offer within the

3    policy limits. <u>Comunale v. Traders & General Ins. Co.</u>, 50 Cal.2s 654, 659 (1958); see

4    also <u>Mariscal v. Old Republic Life Ins. Co.</u>, 42 Cal.App.4th 1617, 1623 (1996). "A trier

5    of fact may find that an insurer acted unreasonably if the insurer ignores evidence

6    available to it which supports the claim." <u>Id.</u>

7    Here, the Tiscarenos have offered a long list of the evidence that was available

8    to Progressive prior to April 2007. (Doc. No. 62 at 1–5.)  For example, Progressive had

9    taken the recorded statement of Kody Porterfield, in which he admitted to driving 85

10   miles per hour at the time of the accident.  They also argue that Progressive could have

11   attained information pertinent to their investigation from several publicly available

12   newspaper articles.  Additionally, the Tiscarenos provided the Court with the expert

13   opinion of Clinton Miller.  Mr. Miller is an insurance consultant who claims to have

14   been retained more than 1,200 times in insurance related matters.[1] (Doc. No. 62 at Exh.

15   3.)  In Mr. Miller's expert opinion, Progressive's failure to tender the policy limits in

16   April 2007 constitutes bad faith. (*Id.*)

17   Viewing these facts in the light most favorable to the Tiscarenos, the Court must

18   acknowledge that triable issues of fact exist.  Progressive's argument—that it was

19   reasonable to delay paying the policy limits until they had received the police report and

20   the information regarding the relationship between Joshua Tiscareno and his

21   parents—was logical and well presented.  Ultimately, however, Progressive offered the

22   entire $100,000 policy limit without the assistance of the police report.  More

23   importantly, the Court can not say that a jury would entirely discount Mr. Miller's

24

25   [1] Progressive has filed an evidentiary objection to Mr. Miller's expert opinion,
seeking to disqualify him under Federal Rule of Evidence 702. (Doc. No. 67.)  The

26   Court appreciates the information provided regarding Mr. Miller, however, Progressive

27   correctly assumed that this Court would be adverse to assessing Mr. Miller's credibility

28   in the present context. (*Id.* at 2.) Progressive's objection to Mr. Miller is **OVERRULED**
without prejudice.

08cv180w

expert opinion.  Nor is the Court able to say, under the applicable legal standard, that a jury could not find that Progressive ignored available evidence. <u>See</u> <u>Mariscal</u>, 42 Cal.App.4th at 1623; <u>see</u> <u>also</u> Doc. No. 54 at Exh. 38.

Because the Tiscarenos have demonstrated that genuine issues of material fact exist regarding Progressive's reasonableness, summary judgment is not appropriate. <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Accordingly, the Court **DENIES** Progressive's motion.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment. (Doc. Nos. 54, 61.)

**IT IS SO ORDERED.**

DATED:  August 3, 2010

_____
Hon. Thomas J. Whelan
United States District Judge